UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- x
In re : Case No. 10-13683 (SCC)
: Chapter 13
ROBERT V. SINGLETON, SR., :
:
Debtor. :
----------------------------------------------------------- x

**OBJECTION OF THE UNITED STATES TRUSTEE TO
BAC HOME LOAN SERVICING, L.P.'S MOTION TO QUASH SUBPOENA**

TO: THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"), hereby respectfully files her objections (the "Objections") to the Motion to Quash Subpoena (the "Motion to Quash," Docket No. 23-24) filed by BAC Home Loans Servicing, L.P. ("BAC"). In support of her Objections, the United States Trustee respectfully represents and states as follows:

## I. SUMMARY STATEMENT

BAC's Motion to Quash lacks merit. Consistent with her statutory duties, the United States Trustee sought discovery in the form of a Bankruptcy Rule 2004 application in order to obtain relevant information regarding the three proofs of claim filed by BAC in this case. The Court granted the Bankruptcy Rule 2004 application without an appearance or objection by BAC. BAC now contends that:

(1) The United States Trustee has no standing to file a Bankruptcy Rule 2004 application;

(2) Assuming the United States Trustee has standing, <u>each and every</u> discovery request by the United States Trustee should be quashed.

(3) The United States Trustee has not demonstrated that the Debtor consents to the United States Trustee's investigation.

The United States Trustee is charged with the duty to oversee and police the integrity of the bankruptcy system and, therefore, must proceed with her investigation to address relevant concerns regarding the accuracy of the proofs of claims that BAC filed in this case. The Court should deny the Motion to Quash for the reasons set forth below.

## II. BACKGROUND

**A.     The Debtor's Petition and Plan**

1. On July 12, 2010 (the "Filing Date"), the Debtor filed for bankruptcy relief under chapter 13 of the Bankruptcy Code. Docket No. 1.

2. On July 26, 2010, the Debtor filed Amended Schedules and a Statement of Financial Affairs (collectively, the "Schedules," Docket No. 8). The Schedules disclosed that the Debtor owns a four-family home at 1149 Croes Avenue, Bronx, New York 10472, with a value of $380,000 (the "Property"). *See* Schedule A. BAC holds an alleged secured claim on the Property. *See* Schedule E. On July 26, 2010, the Debtor filed his model Chapter 13 plan (the "Plan") and application for loss mitigation. Docket No. 9.

3. In a filed letter, BAC stated that it has no objection to the Debtor's request for loss mitigation. Docket No. 18.

4. BAC, however, has filed an objection to confirmation of the Plan. Docket No. 13. BAC contends that it will not be paid in full because the Debtor intends to pay it outside of the Plan, and the Plan does not otherwise provide for payment of all arrearages. *See id.* Confirmation has been adjourned pending the outcome of the Debtor's objection to the BAC claim. *See* Zipes Decl. at ¶ 2. The Chapter 13 Trustee reports that the Debtor is current with his plan payments as of February 9, 2011. *Id.*

**B.     BAC's Proofs of Claim**

5. BAC has filed three proofs of claim in this case. On October 7, 2010, BAC filed

its first proof of claim (Claim 4-1) (the "First POC").  On November 3, 2010, BAC filed its first amended proof of claim (Claim 4-2) (the "Second POC").  On November 11, 2010, BAC filed its second amended proof of claim (Claim 4-3) ("Third POC").

6. The First POC contains no document linking BAC to the underlying note (the "Note") and the mortgage (the "Mortgage") in connection with the Property.  Both the Note and the Mortgage are dated December 18, 2008, and list the Debtor as the borrower, and Euro Mortgage Bankers, Inc. ("Euro"), rather than BAC, as the lender.  The Mortgage also states on the first page that "Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and the Lender's successors and assigns) and to the successors and assigns of MERS."

7. The Second POC is identical to the First POC, except that the proof of claim contains an unsigned assignment of mortgage (last page of the proof of claim), and the signature dates have changed.

8. The Third POC is identical to the Second POC, except that it contains a purported assignment of mortgage (the "Assignment of Mortgage").  Kiyam Poulson, who is outside counsel to BAC, signed the Third POC on November 10, 2010.  The page attached to the POC filed on behalf of BAC which lists BAC's claimed arrearages, however, is dated November 11, 2010, one day after Mr. Poulson's execution of the Third POC.

9. In addition, LuAnne Polak as vice president of MERS signed the Assignment of Mortgage attached to the Third POC.  Michelle D. Card signed as the notary.  The caption above Ms. Card's signature lists Erie County as the place she notarized the Assignment of Mortgage.

10. The Assignment of Mortgage was dated October 21, 2010, which is before the date of the filing of the Second POC.

11. On January 11, 2011, the Debtor filed an objection to BAC's filed claims.  Docket

No. 21. In the objection the Debtor alleges that BAC lacks standing to file a proof of claim (*id*., ¶¶ 12-21), that BAC does not have perfected security interest (*id*., ¶¶ 22-23); and also seeks an accounting from BAC (*id*., ¶¶ 24-28).

12. On February 18, 2011, BAC filed a response to the Debtor's objection (the "BAC Response"). Docket No. 28. According to BAC, "BAC is the holder of the Note endorsed in blank. Under New York law, the transfer of a Note operates to transfer the Mortgage as an incident to the debt." *See* BAC Response at 4. Therefore, "the purported invalidity of the assignments are without legal consequence." *Id*.

**C.  The United States Trustee's Motion for 2004 Order**

13. On December 13, 2010, the United States Trustee filed her Application for (i) an Order Authorizing the Issuance of a *Subpoena Duces Tecum* and (ii) an Order Compelling BAC Home Loan Servicing, L.P. to Appear for Examination Pursuant to Fed.R.Bankr.P. 2004 (the "2004 Application") Docket No. 16.

14. As set forth in the 2004 Motion, there are five items of concern arising from BAC's three proofs of claim, as follows:

  (a)   BAC, the apparent owner of a note and mortgage, filed the First POC without documentary evidence linking it to the Debtor's originally-executed Note and Mortgage.

  (b)   BAC filed the Second POC with a blank assignment of mortgage. That assignment of mortgage was apparently intended to show BAC's link to the Note and Mortgage.

  (c)   BAC's Third POC, apparently filed to address the blank assignment in the deficient Second POC, contained the Assignment of Mortgage, but such Assignment of Mortgage was dated <u>before</u> the filing date of that second proof of claim. A vice president of MERS signed the assignment. According to the assignment, a notary in Erie County, New York witnessed this signature. A notary in Erie County, New York, has no apparent connection to either the signatory of the Assignment of Mortgage, or BAC's law firm.

  (d)   Further, the attorney signing the Third POC signed the proof of claim a day before

the date of the page containing the arrearages at issue, which page was attached to the Third POC.

(e) The Third POC lists a total of $74,906.17 in arrearages. *See* Third POC at 2. The Plan, in contrast, lists $42,227.00 in arrearages. *See* Plan at 3.

15. BAC was served by United States regular mail with the notice of the hearing on the 2004 Application, and the 2004 Application. *See* Docket No. 16, Notice of Hearing, at 2, and Certificate of Service. Neither BAC nor any other party in interest filed an objection to the 2004 Application, or appeared at the January 13, 2011 hearing during which the Court approved such Application. *See* Docket.

**D. The 2004 Order and Subpoena**

16. On January 18, 2011, the Court entered its Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Directing the Oral Examination of BAC Home Loans Servicing, L.P., and Further Directing the Production of Documents (the "2004 Order," Docket No. 22). In addition to granting the 2004 Application, the 2004 Order authorized the issuance of the Subpoena. *See id*. at 1.

17. The Subpoena was served on BAC consistent with a protocol developed between BAC and the Office of the United States Trustee. *See* Zipes Decl. at ¶ 3; *see also*, Ex's. A and B.

18. The Subpoena required BAC to produce documents by January 27, 2011, and also to provide a corporate representative to appear for a Rule 2004 examination on February 3, 2011. *Id.* at Ex. C.

19. The Subpoena requested a number of documents related to the proofs of claim filed by BAC in this Case, including but not limited to copies of the Note and Mortgage and any assignments and endorsements thereof; payment histories for the Debtor's loan with respect to the Note and Mortgage; correspondence referencing the Debtor's loan; documents used or relied upon by BAC in preparing its proofs of claim in this Case; documentary evidence of BAC's

5

payment of all amounts claimed due in the proofs of claim; documentary evidence that BAC is the servicer or holder of the Note and Mortgage; documents related to BAC's policies and procedures for verifying and filing motions for relief from the automatic stay and proofs of claim, including the three proofs of claim in this Case; the retainer or servicing agreement between BAC and MERS; and documents concerning the authority of LuAnne M. Polak to sign documents in connection with the Note and Mortgage. *Id.* at Ex. C.

E. **BAC's Motion to Quash**

20. On January 26, 2011, BAC filed the Motion to Quash (Docket No. 23-24). BAC asserts as a threshold matter that the Subpoena should be quashed based on its view that the United States Trustee lacks authority under 11 U.S.C. § 307 and 28 U.S.C. § 586 to obtain a Rule 2004 examination (Motion to Quash, § I.B, at 4-7). BAC also contends that the Subpoena is procedurally improper for a number of reasons, including: (a) the United States Trustee has failed to show good cause for an examination under Rule 2004; (b) the time and location designated in the Subpoena for the examination and document production are improper, inconvenient, and unduly burdensome; and (c) the United States Trustee failed to obtain the release required by the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401, et seq. ("RFPA") (Motion to Quash, § I.A, at 2-4). Finally, BAC objects to each of the requests of the United States Trustee for production of documents and examination topics. (*Id.*, § II, at 7-15).

### III. DISCUSSION

A. **The United States Trustee's Issuance of the Subpoena is Proper**

   1. **The United States Trustee Has The Statutory Authority to Issue a Subpoena and Conduct a Rule 2004 Examination**

The United States Trustee is an officer of the United States Department of Justice and the "watchdog" who guards against fraud and abuse of the bankruptcy system. *See* H.R. Rep. No.

6

95-595, 95th Cong., 1st Sess. 1, 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049 ("The proposed United States Trustees . . . will serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena."); *see also* In re South Beach Secs., Inc., 606 F.3d 366, 371 (7th Cir. 2010) (the United States Trustee is "the congressionally ordained watchdog – he has a statutory interest in making sure that bankruptcy law isn't abused").

Rule 2004 provides that a motion for the examination of any entity may be brought by "any party in interest." Fed. R. Bankr. P. 2004(a). The United States Trustee is a party in interest for the purposes of Rule 2004, because Congress gave her statutory standing under 11 U.S.C. § 307 to participate in this case in furtherance of her duties. *See, e.g.,* In re Parsley, 384 B.R. 138, 147 (Bankr. S.D. Tex. 2008) (holding that the United States Trustee was well within his authority to investigate mortgage servicer's conduct to determine if that conduct threatened the integrity of the bankruptcy system).

Section 307 confers broad standing on the United States Trustee to "raise[,] . . . appear and be heard on *any issue in any case* or proceeding" arising under the Bankruptcy Code. 11 U.S.C. § 307 (emphasis added). In this regard, the Second Circuit has stated – "It is difficult to conceive of a statute that more clearly signifies Congress's intent to confer standing." Adams v. Zarnel (In re Zarnel), 619 F.3d 156, 161 (2d Cir. 2010), *quoting* United States Trustee v. Columbia Gas Sys. (In re Columbia Gas Sys.), 33 F.3d, 294, 296 (3d Cir. 1994). *See also* Stanley v. McCormick, Barstow *et al*. (In re Donovan Corp.), 215 F.3d 929 (9th Cir. 2000); In re Pillowtex, Inc., 304 F.3d 246, 250 (3d Cir. 2002) ("[T]he House Report to the legislation expanding and implementing the [United States] Trustee program on a national scale, embodied in 11 U.S.C. § 307, *expressly puts the United States Trustee on the level of a party*.") (emphasis added).

Section 307 thus provides a statutory basis for the United States Trustee to proceed under

Bankruptcy Rule 2004. In In re Countrywide Home Loans, Inc., 384 B.R. 373, 385 (Bankr. W.D. Pa. 2008), the court concluded that the United States Trustee has the power under section 307 to conduct a Rule 2004 examination to investigate creditor Countrywide's potential abuse of bankruptcy system, and is a party in interest with standing to conduct the examination. The Court had "no difficulty concluding that the plain meaning of the power to 'raise' and to 'appear and be heard' as to any issue in any bankruptcy case or proceeding includes the ability to conduct examinations pursuant to Rule 2004 in the right circumstances." *Id.* Like here, in that case, the United States Trustee was investigating BAC's conduct in asserting claims in a bankruptcy case.[1] According to the court:

> The UST has a sufficient stake in this case because she has been charged to act as a watchdog to protect the integrity of the bankruptcy system. Assuming for the moment that the UST has at least averred sufficient allegations of fact to raise the possibility of Countrywide's abuse of the bankruptcy system, the UST certainly has an interest in looking further into this possibility for no other reason than she is required to do so because of her statutory duties as interpreted by applicable case law.

*Id.* at 391.[2]

Bankruptcy Judge Tighe recently wrote that Section 307 "is written in extremely broad language." In re Subpoena Duces Tecum, Misc. No. 1:10-mp-00101-MT (Bankr. C.D. Cal., Jan. 28, 2011); *see also* Zipes Decl. Ex. C. In the context of BAC's questionable charges, Judge

---

[1] BAC is the successor of an affiliate of Countrywide Home Loans, Inc. ("Countrywide HLI"). Specifically, Countrywide HLI and its affiliates, including Countrywide Home Loans Servicing, LP ("Countrywide HLS"), operated a mortgage servicing business that serviced millions of home loans nation-wide. In July 2008, several Countrywide affiliates were acquired by Bank of America Corporation. Subsequent to the merger, Countrywide HLS became known as BAC.

[2] The same law firm that represented Countrywide HLI in the Countrywide case is representing BAC here. For that reason, BAC's failure to cite to the Countrywide decision is disingenuous.

8

Tighe stated:

> The nature of this inquiry is precisely the type of issue where the UST, as both impartial administrator and 'watchdog' of bankruptcy administration, should be afforded investigative powers. The fees and costs included in the secured lenders' claims have been an area of great contention between debtors and those secured lenders for some time. An individual debtor facing foreclosure is unlikely to have the ability or the resources to seek discovery of this complicated area, yet similar issues are raised in multiple cases. At the same time, the UST is an independent party and can evaluate any information it receives without a pecuniary interest in the claims objection process.

Subpoena Duces Tecum, Misc. No. 1:10-mp-00101-MT, at 5.

Prior decisions of this Court have either granted motions by United States Trustees to conduct Rule 2004 examinations without any apparent objection to standing, or have referenced prior orders granting such relief. *See, e.g.,* Gache v. Balaber-Strauss, 198 B.R. 662, 663 (S.D.N.Y. 1996); *see also* In re Degiorgio, No. 05-39032(CGM), 2006 WL 2583310, *1 (Bankr. S.D.N.Y. July 14, 2006).

BAC's Motion to Quash also flies in the face of an unbroken line of decisions, including several from the Second Circuit, that broadly construe the United States Trustee's standing in a variety of contexts, including instances where no statute or rule expressly mentions the United States Trustee. *See, e.g.,* In re NDSB North America, Inc., __ F.3d __, 2011 WL 350480, *4 n.3 (2d Cir., February 7, 2011) (in dicta, the Court stated that while a pecuniary interest can form a basis to appeal, "[t]he 'public interest' may also provide standing to appeal, as in the case of a United States Trustee . . . ."); Zarnel, 619 F.3d at 161-62 (2d Cir. 2010) (reversing district court ruling that the United States Trustee lacked standing to seek dismissal of debtors' cases for failure to obtain credit counseling); United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.), 315 F.3d 217, 225 (3d Cir. 2003) (the United States Trustee has standing to challenge an indemnification provision in a professional retention agreement).

BAC incorrectly contends that the powers and duties of the United States Trustee are

primarily set forth in 28 U.S.C. § 586(a). That argument has failed twice. *See* Countrywide, 384 B.R. at 384-86 (explaining that section 307 is deliberately broad, explicitly ensuring that the United States Trustee can act in areas where Congress did not specifically foresee a need for him to act, while section 586 sets forth specific matters in which Congress could foresee that the United States Trustee could or should become involved within the context of section 307's broad powers); *see also* Subpoena Duces Tecum, Misc. No. 1:10-mp-00101-MT, at 4-6. Section 586 is not, as BAC would have it, an exclusive list of powers held by the United States Trustee. *See* Countrywide, at 385-86. Rather, section 586 is a non-exclusive list of powers granted to the United States Trustee.[3] *See id.*, and Subpoena Duces Tecum, Misc. No. 1:10-mp-00101-MT, at 4-6. "Section 307 – not section 586 and the enumerated provisions in the Code to which BAC refers – is the 'ceiling' of the UST's powers and duties." *Id*. at 4. Limiting the power of the

---

[3] Section 586 can make no claim to exclusivity. Several other sections of the Bankruptcy Code complement section 586. *See e.g.*, 11 U.S.C. § 110(j) (providing standing to bring a civil action against a bankruptcy petition preparer); 11 U.S.C. § 303(g) (providing standing to appoint an interim trustee in an involuntary case); 11 U.S.C. § 321 (providing standing to serve as a trustee in a case if necessary); 11 U.S.C. § 327(c) (providing standing to object to professionals employment); 11 U.S.C. § 330(a) (providing standing to participate in hearings on compensation of officers); 11 U.S.C. § 332 (providing standing to appoint a consumer ombudsman); 11 U.S.C. § 341 (proving standing to convene and preside at first meeting of creditors); 11 U.S.C. § 343 (providing standing to examine the debtor); 11 U.S.C. § 526 (providing standing to bring actions against a debt relief agency); 11 U.S.C. § 701 (providing standing to appoint trustees); 11 U.S.C. § 703 (providing standing to appoint successor trustees); 11 U.S.C. § 707(a) (providing standing to move for dismissal of a chapter 7 case); 11 U.S.C. § 707(b) (providing standing to move for dismissal of a chapter 7 case for abuse); 11 U.S.C. § 727 (providing standing to object to or seek revocation of discharge); 11 U.S.C. § 1102 (providing standing to appoint creditors committees); 11 U.S.C. § 1104 (providing standing to seek appointment of a trustee or examiner); 11 U.S.C. § 1105 (providing standing to seek removal of a trustee); 11 U.S.C. § 1112 (providing standing to seek conversion or dismissal of case); 11 U.S.C. § 1114 (providing standing to appoint committee of retired employees); 11 U.S.C. § 1163 (providing standing to appoint in railroad reorganization case); 11 U.S.C. § 1202 (providing standing to appoint a chapter 12 trustee and to object to confirmation of chapter 12 plan); 11 U.S.C. § 1302 (providing standing to appoint chapter 13 trustee); 11 U.S.C. § 1307 (providing standing to seek conversion or dismissal of case).

United States Trustee to the duties set forth in section 586 would render section 307 superfluous; an outcome incompatible with the canons of statutory construction. *Id*. at 5; s*ee* TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks and quotations omitted). To quote Judge Tighe – "It would make no sense to confer investigative powers on the UST and give them the same rights as a party in interest and not to afford rights to utilize Rule 2004 examinations." Subpoena Duces Tecum, Misc. No. 1:10-mp-00101-MT, at 5.

It is proper for the United States Trustee to act in the Debtor's case in these circumstances. The United States Trustee's participation in these proceedings is necessary because BAC's possible non-compliance with the law affects the public interest. Here, it appears that BAC has filed three facially deficient claims. The filing of inaccurate proofs of claims by purported creditors in bankruptcy proceedings have a negative effect on the bankruptcy system in many ways. For example, debtors may be required to pay more than required to satisfy a Chapter 13 plan. Also, if illegal claims are allowed by the bankruptcy court, there may be insufficient assets to satisfy all creditors, lower priority creditors may be discriminated against as there may be insufficient funds to satisfy their claims and the unsubstantiated claims of alleged senior creditors may improperly be given priority status.

    **2.    BAC's Motion To Quash – Insofar as it Argues that the United States Trustee Lacks Authority - Is Untimely**

In addition to finding that the Subpoena is valid, the Court should find that BAC's Motion to Quash is untimely. Here, BAC has undertaken a "scorched-earth" approach by filing an unsubstantiated pleading. The Court may wish to take judicial notice of the fact that BAC has been found to have filed deficient proofs of claims in other bankruptcy cases throughout the

nation that are identical to the facially deficient claims at issue in the Bankruptcy Rule 2004 Motion which the Court granted the United States Trustee the authority to investigate in this case.

Although BAC's Motion to Quash was filed eight days after the Court's entry of the 2004 Order on January 18, 2011, it fails to mention the 2004 Order in any manner. BAC was duly served by mail with notice of the hearing on the 2004 Application, plus the Application and all supporting papers. *See* Docket No. 16 (containing Certificate of Service). Moreover, by virtue of its counsel's registration on the CM/ECF system for electronic receipt of all papers filed in this Case, proper service is imputed upon BAC. Rule 9036; United States Bankruptcy Court for the Southern District of New York, General Order M-399, § II.B.

It is hornbook bankruptcy law that "fairness and due process [ ] requires that creditors have notice of particular matters affecting them and an opportunity to be heard with regard to their interests." In re Gale, 144 B.R. 411, 414 (Bankr. E.D. Ark. 1992). But, "there is no requirement that the Court seek out creditors: creditors are not permitted to sit on their rights and wait for the Court to ask their opinion." *Id*. BAC, which evinces an interest in the matter, had a full opportunity to object to the 2004 Application. BAC has not even attempted to demonstrate that it should be relieved from compliance with the Bankruptcy Rule 2004 Order. In fact, it failed to object to the 2004 Application and to appear at the hearing on the United States Trustee's motion. For this reason, BAC has no grounds, equitable or otherwise, to demand the relief that it is seeking. The Court should not reconsider its decision authorizing the United States Trustee's authority to investigate here.

BAC's Motion to Quash is a disguised motion to reargue or reconsider under Rule 9023. There is, however, "no legal authority to support [the] contention that the filing of a motion for reconsideration cures a failure to appear or object at an earlier stage of the [bankruptcy]

proceedings." In re Ray, 597 F.3d 871, 876 (7th Cir. 2010) (party failing to object to dismissal of bankruptcy case does not have standing to appeal dismissal order). Furthermore, because "arguments raised for the first time in a motion to reconsider are generally deemed forfeited, [BAC's Motion to Quash] does not remedy its initial failure to appear and present its objections to the bankruptcy court." Id. (internal citation omitted); *Cf.*, White v. Univision (In re Urban Broadcasting Corp.), 304 B.R. 263, 271 (E.D. Va. 2004) (three circuit courts of appeal have "concluded that attendance and objection at the bankruptcy court proceedings are prerequisites for standing to appeal from an order from that proceeding.")

**B.     BAC's Objections To Specific Document Requests Should Be Overruled**

    **1.     BAC Raises Unsubstantiated Objections Regarding the UST's Information Requests**

Assuming that it will not prevail on its standing argument, BAC has also objected to each and every document request on various grounds.[4] BAC has failed to satisfy its legal burden to explain, however, how it would be unduly burdened by producing the requested documents. In re Worldcom, Inc., 2008 WL 427986, *3 (Bankr. S.D.N.Y., Feb. 14, 2008) ("The party resisting discovery bears the burden of showing why discovery should be denied"), *referencing* Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

For example, BAC does not, *inter alia,* estimate the number of documents that would be responsive to the Subpoena, articulate the scope of the search for responsive information, or identify the costs it would bear to comply with the Subpoena. In Subpoena Duces Tecum, Judge Tighe found that:

> all of these boilerplates objections border on the frivolous and are a waste of this Court's limited resources. Furthermore, the Court finds it curious that BAC

---

[4] BAC filed the Motion to Quash without initiating any discussion with this Office regarding the scope of the requests.

> regards as 'burdensome' the production of documents relating to individual loans when those documents are supposed to be reviewed by BAC before it files its proofs of claim.

Subpoena Duces Tecum, Misc. No. 1:10-mp-00101-MT, at 9.

Likewise, BAC objects to certain requests on the grounds that they call for production of information that is confidential or a trade secret. BAC's assertion of this defense to the United States Trustee's motion is without support and therefore the Court's order in favor of the United States Trustee should not be set aside on these grounds. Recently, a California district court stated that:

> Without any declarations to support its confidentiality claim [under Rule 26(c)], the Court cannot simply assume defendant keeps this information confidential. Thus, defendant has not met its burden to show information responsive to the . . . interrogatories and document requests . . . are trade secrets or 'confidential . . . commercial information' and defendant must respond to this discovery.

National Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP, 256 F.R.D. 678, 683 (C.D. Cal. 2009).

If BAC believes that the Document Requests seek confidential and proprietary information, and it cannot work out an appropriate protocol with the United States Trustee to deal with its concerns, it is free to seek a protective order pursuant to Rule 9018 and section 107. *Id.* ("[I]f defendant truly believes it has confidential information that should be protected by a protective order, it should have . . . filed a motion for a protective order before the date by which it was to produce responsive documents."). As the examination authorized under the 2004 Order has not yet occurred, BAC's objection based on confidential information or trade secrets in connection with such examination is premature.

### 2. The 2004 Order and Subpoena Adequately Safeguard BAC's Interests

The 2004 Order has sufficient safeguards to protect the legitimate interests of BAC. Consistent with Fed. R. Civ. P. 45(d)(1)(D)(2)(A), BAC has been "directed to provide a privilege

log." *See* Zipes Decl. Ex. B (2004 Order is attached). Accordingly, the instructions to the Subpoena specifically instruct BAC not to provide privileged documents. *See* <u>Subpoena Duces Tecum</u>, Misc. No. 1:10-mp-00101-MT, at 9 (upholding instructions in Subpoena issued by United States Trustee for BAC "not to produce any privileged documents, but to create a 'privilege log' instead."). Moreover, as with BAC's trade-secret objection, because the examination authorized under the 2004 Order has not yet occurred, BAC's privilege-based objection is also premature.

        3.        **BAC's Rule 45 Arguments Lack Merit**

The Subpoena calls for BAC's examination in the New York City office of the United States Trustee. In this regard, BAC objects that the time and location of the examination and document production are inconvenient and unduly burdensome, and therefore do not comport with the requirements of Bankruptcy Rules 2004 and 9016 (which incorporates Fed.R.Civ.P. 45). Motion to Quash, ¶ 2, at 2. This argument, however, is misguided.

BAC has filed three proofs of claim in this Case, thereby consenting to the jurisdiction of the Court. <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 58-59 (1989). BAC also has retained two New York law firms to represent it in this Case, the Druckman Law Group, PLLC and Locke Lord Bissell & Liddell LLP. BAC has filed the BAC Response and is fully engaged in this case. In that light, its allegation of inconvenience and undue burden are not persuasive, and should not be given weight.

Furthermore, BAC has not shown, or attempted to show, how the particular Subpoena at issue here, as opposed to any other subpoena, is unduly burdensome. <u>Subpoena Duces Tecum</u>, Misc. No. 1:10-mp-00101-MT, at 8. Even though the United States Trustee has issued several subpoenas to BAC in the past months, "this does not, by itself, make every subpoena issued by the UST an undue burden on BAC." *Id*.

15

BAC also states that, in contravention of Fed. R. Civ. P. 45(c)(3)(A)(ii) and Bankruptcy Rule 9016, the Subpoena requires it to "travel more than 100 miles" from California, its principal place of business. *Id*., ¶ 4, at 3. With exceptions not applicable here, Fed. R. Civ. P. 45(c)(3)(A)(ii) provides that an "issuing court must quash or modify a subpoena that: . . . (ii) requires a person who is not a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." *Id*. This rule is intended for the protection of non-party witnesses, to prevent "such witnesses from being subjected to excessive discovery burdens in litigation in which they have little or no interest." In re Edelman, 295 F.3d 171, 178 (2d Cir. 2002).

Assuming the rule applies here, BAC has not yet designated the "person" to be deposed at the examination, and it is still too premature to ascertain whether Fed.R.Civ.P. 45(c)(3)(A)(ii) is actually in issue. In any event, the rule does not apply here, because BAC is currently a "party" in this Court. By virtue of the filing of its three proofs of claim, BAC has subjected itself to the Court's equitable power and consented to the Court's broad equitable jurisdiction.[5] Granfinanciera, 492 U.S. at 58-59; Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.), 419 F.3d 83, 98 (2d Cir. 2005). Moreover, the filing of BAC's proofs of claim is analogous to the filing of a complaint, triggering the Court's subject matter jurisdiction under 28 U.S.C. § 157(b)(2). *Id*. The Debtor's objection to BAC's claim has given rise to a contested matter in which BAC is a party. In re Tender Loving Care Health Servs., Inc., 562 F.3d 158, 162 (2d Cir. 2009). BAC clearly has an "interest" in this matter. Edelman, 295 B.R. at 178.

The proofs of claim filed by BAC are publicly-available documents, and in the discharge

---

[5] Kelly May, a vice president of BAC, filed an affidavit in support of the BAC Response. However, her address was not provided. BAC should state whether it intends to make same argument of inconvenience in the event her deposition is sought.

of her statutory duties, the Rule 2004 Order entitles the United States Trustee to resolve her concerns about BAC's proofs of claim, and BAC's standing to file them. To that end, the United States Trustee has properly been granted authority to examine a BAC representative about the underlying documents, records and information provided to the persons preparing BAC's proofs of claim. The United States Trustee has also properly been granted authority to ask questions about non-privileged policies, procedures, documents, records and information provided by BAC to the persons who prepared and/or signed its three proofs of claim, including its counsel. In addition, the United States Trustee also properly been granted the authority to make inquiry regarding what information, if any, BAC provided to MERS in this Case, and how BAC provides such information, for purposes of drafting and filing proofs of claim in the Southern District of New York.

BAC's passing reference to the "purportedly" served Subpoena is disingenuous. Notice of Motion, at 1 (Doc. No. 25). As set forth above, BAC entered into a Protocol with the United States Trustee on service issues. *See* Zipes Decl. at ¶ 3 and Ex. C. In this Case, the United States Trustee relied on – and complied with – that Protocol. *See* Zipes Decl. at ¶ 3. BAC is a national enterprise. Had it been known that BAC would raise service issues despite the Protocol to which it has agreed, the United States Trustee could – and would – have explored alternative means of service that would have eliminated any defective service allegations under Fed. R. Civ. P. 45.

**C.    The United States Trustee has Complied with the Right to Financial Privacy Act.**

BAC argues that the United States Trustee does not have the Debtor's consent to obtain certain documents and that United States Trustee should provide proof of its compliance with the Right to Financial Privacy Act ("RFPA"). Motion to Quash, ¶ 3, at 3. The United States Trustee has complied with RFPA, and provided BAC with the required certificate signed by the Debtor.

17

*See* Zipes Decl. at ¶ 3.  In addition, the United States Trustee is in possession of a letter from Debtor's counsel fully supporting the issuance of the Subpoena and the 2004 Order.  *See* Zipes Decl. at ¶ 5.

### IV.  CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Motion to Quash, and grant such other relief as this Court deems just and proper.

Dated: New York, New York
      February 24, 2011

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By: ***/s/ Andrew D. Velez-Rivera***
Andrew D. Velez-Rivera
Greg M. Zipes
Trial Attorneys
Office of the United States Trustee
33 Whitehall Street, Suite 2100
New York, New York 10004
Tel. No. (212) 510-0500